## WEBB v. B. F. STURTEVANT CO.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. MASTER AND SERVANT (§ 285*)—INJURIES TO SERVANT—ACTIONS—EVIDENCE
—SUFFICIENCY.

In an action by a servant, injured in falling from a plank on a trestle
in a building, evidence *held* sufficient to go to the jury on the question
whether the loose plank was placed thereon by the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002,
1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

2. MASTER AND SERVANT (§ 106*)—INJURIES TO SERVANT—SAFE PLACE TO
WORK—"SCAFFOLD"—"WAY."

Where one installing a heating plant in the building of a railroad com-
pany used a trestle or framework built to carry the weight of counter-
shafts and hangers as a platform on which to run the heating pipes, and
placed planks thereon, such platform, although the property of a rail-
road company, constituted a scaffold or way within the purview of the
Employer's Liability Act, for the safety of which the one installing the
heating plant was liable to his servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–
198; Dec. Dig. § 106.*

For other definitions, see Words and Phrases, vol. 8, pp. 7417, 7418,
7795.]

Appeal from Trial Term, Albany County.

Action by John Webb against the B. F. Sturtevant Company. From
a judgment for plaintiff, and an order denying defendant's motion for
new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-
ARD, and WOODWARD, JJ.

Edgar T. Brackett, of Saratoga Springs (Luther A. Wait, of Sara-
toga Springs, of counsel), for appellant.

William E. Woollard, of Albany (Michael D. Reilly, of Albany, of
counsel), for respondent.

LYON, J. The plaintiff was employed by the defendant as a tink-
er's helper in its work of installing a heating system in one of the
shops of the New York Central & Hudson River Railroad Company
at West Albany, N. Y. He had worked for two weeks prior to the
11th day of October, 1910, mainly assisting one Williams, who was
defendant's foreman under one Dunn, who was defendant's super-
intendent in charge of the work, in getting the large galvanized iron
pipes, which were to constitute part of the heating system, into the
building and riveting them preparatory to placing them in position.
One line of heating pipes was to be suspended from the floor of an
inclosed balcony, which extended across the westerly end of the build-
ing. About 6 feet beneath this balcony and about 16 feet above the
floor was a framework 30 feet long by 20 feet wide, made of floor
beams, the crosswise timbers of which were 6 by 8 inches and about
6 or 7 feet apart, and the lengthwise timbers 6 by 4 inches and in each
set about 4 feet apart. The spaces between the timbers were open.
The framework was used to carry the weight of countershafts and

hangers, which were suspended from stringers attached to the underside of the framework. On the morning of October 11th plaintiff was directed by Dunn to go with Williams upon this framework to assist him in placing the heater pipes. The plaintiff then for the first time went thereon, following Williams from the floor up a ladder which the latter had fastened to a timber at the southerly end of the framework, and from the top of the ladder over the framework towards the northerly end thereof a distance of 15 or 20 feet, where the work was being done. After working for about an hour, Williams directed plaintiff to go down to the floor and get a saw, which plaintiff did by going southerly to the ladder, and down the ladder to the floor. In returning, plaintiff came up the ladder and, turning to the left after reaching the top, as he claimed he had done when following Williams, stepped upon an unfastened plank laid upon the framework, which tipping fell with plaintiff to the floor below. The plaintiff sustained severe injuries, to recover damages on account of which this action was brought under the provisions of the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

The plaintiff testified that laid lengthwise on the framework, and leading from near the ladder to the northerly end, where Williams and the plaintiff were working, was a runway of unfastened plank two planks wide, which the plaintiff claims furnished a direct and the most natural way for him to go to his work, and that it was the tipping of one of these planks as plaintiff stepped upon it which caused plaintiff to fall; while it is defendant's contention that there was but a single plank about 2 inches thick, 10 or 12 inches wide, and 6 or 7 feet long, which laid crosswise of the longitudinal timbers, the end of which projected about 18 inches over the timber, and that it was plaintiff's stepping upon the unsupported end of this plank, causing it to tip, which precipitated plaintiff to the floor below. Upon the trial plaintiff introduced testimony to the effect that it was customary to secure planks by means of spikes or ropes, and Dunn testified that the making of the ways secure and safe for plaintiff was left to Williams.

The court left it for the determination of the jury whether the plank which fell with plaintiff was any part of defendant's scaffold, or had been adopted by defendant as a part of its ways by which plaintiff was to get to the work where he was obliged to go. Upon the argument of the appeal defendant's counsel waived any defense of contributory negligence, and the single question involved here is whether the evidence was sufficient to establish liability upon the part of the defendant.

[1] It was fairly a question of fact for the jury whether the defendant placed the runway of planks upon the framework. Although Superintendent Dunn testified that he did not do so, and that he thinks the planks did not belong to the defendant, and Foreman Williams testified that there was only the one plank there, which was the one which fell with the plaintiff, and that it did not belong to the defendant, and that none of the defendant's men put it there, yet, as before observed, the plaintiff testified that there was a runway 2 planks wide extending from the ladder to the place where he and Williams were working, and Williams testified that the defendant had about 80 planks

on that job, and Dunn testified that when he was upon the framework prior to the accident, whether a day or a week before he cannot say, there were planks lying there, but he had no idea how many, that there may have been 2 and may have been 10, that the defendant had planks there of its own for use, which were all over the building wherever workmen had to go and work, and that as the piping went along the workmen were required to move from point to point on the framework, and that defendant's workmen previous to the accident had hoisted the pipe, "large pieces of galvanized iron," upon the framework with block and fall, but that he did not know where the persons who received that pipe up there stood, nor who made the arrangements for the planks up there which the plaintiff testified to. Without planking laid upon this framework, defendant's workmen who received the pipe had no place to stand, excepting upon the narrow timbers. Nothing in the evidence indicates the need of this runway upon the part of either the railroad company or of any contractor other than the defendant, and in fact there is no proof that any other contractor was working about this framework at that time or previously. It is significant that the defendant called none of its workmen who had been engaged in hoisting the piping or receiving it upon the framework as witnesses upon the trial. Concededly whatever planks were there were fastened in no way, but lay loosely upon the timbers. Whether the defendant did not with some of its planks construct this runway, and whether such construction was not a negligent one, or whether the defendant did not negligently adopt a defective runway, were under the evidence fairly questions of fact for the jury.

[2] The defendant contends, however, that even if such were the fact the defendant is not made liable under the provisions of the Employer's Liability Act, for the reason that the planks did not constitute a scaffold, nor were they any part of the defendant's ways, works, machinery, or plant, and that, if they constituted a scaffold, it was not defendant's scaffold and defendant is not liable for any of its defects, and that, the place where the work was being done by plaintiff and Williams not being owned or controlled by the defendant, the defendant is not liable, even if such place were not a safe place for the plaintiff to work. Concededly the building was the property of the railroad company in process of construction, and this framework was a permanent fixture of the building, and the defendant in installing its heating plant adopted the situation and conditions as it found them, and used the appliances and tools of the railroad company where necessary.

While the defendant did not have the ownership of the framework, it had rightfully the occupation, use, and control thereof for its work of suspending piping of the heating plant from the balcony overhead, and this was sufficient, without the ownership, to furnish a basis for the master's duty. It was bound to the use of reasonable care in providing its servants with a safe way and a safe place to work, and in maintaining them in a reasonably safe condition, whether the way was constructed or adopted by it. The fact that the framework which acted as the support belonged to the railroad company in no way relieved the defendant from such duty to its servants as to the runway

placed thereon. The defect causing injury to the plaintiff was not in the framework, the substructure, but in the negligent condition of the runway, the superstructure, to the knowledge of defendant's superintendent and foreman, as the jury had the right to find under the evidence, and evidently did find by their verdict.

None of the cases cited by appellant hold that a master, who was rightfully in the occupation, use, and control of the scaffold or way, was exempted from liability to the servant for injuries received by the latter through the negligence of the master in failing to use reasonable care in the construction or adoption of the scaffold or way, because of the ownership in another of such scaffold or way, and are not applicable to the case at bar.

The judgment and order appealed from should be affirmed. All concur.